UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRIENDS OF THE EARTH U.S. AND JUSTIÇIA AMBIENTAL,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>EXPORT-IMPORT BANK OF THE UNITED STATES *et al.*,<br><br>　　　　Defendants,<br><br>　and<br><br>TOTALENERGIES EP MOZAMBIQUE AREA 1, LIMITADA,<br><br>　　　　Proposed Defendant-Intervenor. | Case No. 1:25-cv-02235-CJN |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION OF TOTALENERGIES EP MOZAMBIQUE AREA 1, LIMITADA
<u>TO INTERVENE AS DEFENDANT</u>**

# **TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 5

ARGUMENT .............................................................................................................................. 8

I.  TEPMA1 HAS A RIGHT TO INTERVENE UNDER RULE 24(A) ............................... 9

    A.  TEPMA1's Motion Is Timely ................................................................................ 9
    B.  TEPMA1 Has a Legally Protected Interest .......................................................... 10
    C.  This Action May Impair TEPMA1's Interest ...................................................... 11
    D.  No Existing Party Adequately Represents TEPMA1's Interest ........................... 11
    E.  TEPMA1 Has Article III Standing ....................................................................... 12

II. ALTERNATIVELY, PERMISSIVE INTERVENTION IS PROPER UNDER RULE 24(B) ................................................................................................................... 13

III. TEPMA1 SHOULD BE PERMITTED TO FILE ITS ANSWER OR RESPONSIVE PLEADING BY THE SAME DEADLINE AS FEDERAL DEFENDANTS ................ 14

CONCLUSION ......................................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Am. Soybean Ass'n v. EPA*,
  No. 1:20-cv-03190, Dkt. 20 (D.D.C. Nov. 13, 2020) ................................................................14

*Appleton v. FDA*,
  310 F. Supp. 2d 194 (D.D.C. 2004) ..........................................................................................10

*Ass'n of Wash. Bus. v. EPA*,
  No. 23-cv-3604 (DLF), 2024 WL 3225937 (D.D.C. June 28, 2024) .......................................14

*Cayuga Nation v. Zinke*,
  324 F.R.D. 277 (D.D.C. 2018) ..................................................................................................11

*Competitive Enter. Inst. v. FCC*,
  970 F.3d 372 (D.C. Cir. 2020) ..................................................................................................13

*County of San Miguel v. MacDonald*,
  244 F.R.D. 36 (D.D.C. 2007) ....................................................................................................13

*Crossroads Grassroots Pol'y Strategies v. FEC*,
  788 F.3d 312 (D.C. Cir. 2015) ............................................................................................ *passim*

*Dimond v. District of Columbia*,
  792 F.2d 179 (D.C. Cir. 1986) .............................................................................................11, 12

*Friends of Earth v. Haaland*,
  No. 21-cv-2317, 2022 WL 136763 (D.D.C. Jan. 15, 2022) ......................................................10

*Fund for Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003) ................................................................................9, 11, 12, 13

*Inst. S'holder Servs., Inc. v. SEC*,
  __ F.4th __, No. 24-5105, 2025 WL 1802786 (D.C. Cir. 2025), TEPMA1 ........................9, 12

*Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*,
  937 F. Supp. 2d 18 (D.D.C. 2013) ............................................................................................13

*Kinsella v. BOEM*,
  No. 1:22-cv-02147-JMC, Dkt. 43 (D.D.C. Nov. 7, 2022) ....................................................5, 14

*Little Sisters of the Poor Sts. Peter & Paul Home v. Pennsylvania*,
  591 U.S. 657 (2020) ..................................................................................................................12

*Mova Pharm. Corp. v. Shalala*,
    140 F.3d 1060 (D.C. Cir. 1998)..............................................................................4, 10

*Nat'l Tr. for Historic Pres. v. Semonite*,
    No. 1:17-cv-01574-RCL, Dkt. 24 (D.D.C. Sept. 12, 2017)..........................................14

*NRDC v. Costle*,
    561 F.2d 904 (D.C. Cir. 1977)......................................................................................11

R *ex rel. Friends of the Earth Ltd. v. Sec'y of State for Int'l Trade/UK Export Finance UKSC*
    2023/0026, https://tinyurl.com/d6ran749....................................................................2

R *ex rel. Friends of the Earth Ltd. v. The Secretary of State for International Trade/UK Export Finance*
    [2023] EWCA Civ 14, https://tinyurl.com/2m96as6m.................................................2

*Roane v. Leonhart*,
    741 F.3d 147 (D.C. Cir. 2014).......................................................................................9

*Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*,
    331 F.R.D. 5 (D.D.C. 2019).........................................................................................14

*Save Long Beach Island v. U.S. Dep't of Commerce*,
    No. 3:23-cv-01886-RK-JBD (D.N.J. May 19, 2023) ..................................................15

*Smoke v. Norton*,
    252 F.3d 468 (D.C. Cir. 2001).......................................................................................9

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972).....................................................................................................11

*WildEarth Guardians v. Jewell*,
    No. CV 16-1724, 2016 WL 11720188 (D.D.C. Nov. 23, 2016)..................................12

**STATUTES**

12 U.S.C. § 635(a)(1)...........................................................................................................7, 8

**RULES**

Fed. R. Civ. P. 24........................................................................................................................4

Fed. R. Civ. P. 24(a) ............................................................................................................4, 14

Fed. R. Civ. P. 24(a)(2)...............................................................................................................9

Fed. R. Civ. P. 24(b) ........................................................................................................4, 13, 14

Fed. R. Civ. P. 24(b)(1)(B) ................................................................................................13, 14

Fed. R. Civ. P. 24(b)(3) ...........................................................................................................13

Fed. R. Civ. P. 24(c) ............................................................................................................5, 14

Local Civil Rule 7(j) ............................................................................................................5, 14

Local Civil Rule 7(m) ................................................................................................................5

## REGULATIONS

83 Fed Reg 61379 (Nov. 29, 2018) ...........................................................................................6

84 Fed. Reg. 44303 (Aug. 23, 2019) .........................................................................................7

## OTHER AUTHORITIES

Environmental and Social Impact Assessment (captured Dec. 17, 2015), available
    at https://tinyurl.com/3nu3ty3j ............................................................................................6

EXIM, *EXIM Board of Directors Votes to Proceed with $4.7 Billion LNG
    Equipment and Services Transaction After Four-Year Delay* (March 19,
    2025), https://www.exim.gov/news/exim-board-directors-votes-proceed-47-
    billion-lng-equipment-and-services-transaction-after ........................................................8

EXIM, EXIM Board Unanimously Approves Amended Financing of U.S. Exports
    to Mozambique LNG Project and Support of More U.S. Jobs in Additional
    States (May 14, 2020), https://www.exim.gov/news/exim-board-unanimously-
    approves-amended-financing-exports-mozambique-lng-project-and-support ................2, 7

EXIM, Pending Transactions for Environment Category A and B Projects
    (captured Oct. 25, 2016), available at https://tinyurl.com/2znhhkpb .................................6

EXIM, *President Biden Authorizes Board Transition Steps* (July 21, 2021),
    https://tinyurl.com/3e7wsywh ............................................................................................3

U.N. Dep't of Economic & Social Affairs, *Least Developed Country Category:
    Mozambique Profile*, https://policy.desa.un.org/themes/least-developed-
    countries-category/least-developed-country-category-mozambique-profile
    (last visited July 24, 2025) ..................................................................................................6

## INTRODUCTION

Proposed Intervenor-Defendant TotalEnergies EP Mozambique Area 1, Limitada ("TEPMA1") is the operator for the Mozambique LNG Project ("Project") whose financing Plaintiffs Friends of the Earth U.S. and Justiça Ambiental (collectively, "FOE") seek to enjoin and vacate through this action—with the expressed aim of halting the Project entirely. As the Project's operator, largest shareholder, and an intended recipient of the proceeds of the loan that FOE challenges, TEPMA1 has a strong financial interest in the outcome of this case and seeks to intervene to protect this interest.

In this case, FOE challenges a unanimous March 13, 2025 decision by the Board of Defendant Export-Import Bank of the United States ("EXIM") to extend the final disbursement date of a $4.7 billion loan financing the Project. FOE did not challenge the transaction when EXIM originally approved the loan in 2019 or when it amended the loan in 2020, or at any time until now. The recent amendment extended the final disbursement date for the Project that EXIM had already approved financing for to accommodate delays that were beyond the Project's control. After attacks by Al-Shabaab insurgents rendered progress on the Project impossible, TEPMA1 declared *force majeure* in 2021, and work on the Project suspended. With the security situation now stabilized and Mozambique supporting the resumption of Project construction, the Board unanimously approved the amendment to ensure that the proceeds from the loan that it had already unanimously approved could be disbursed in a way that accommodated the Project's current timeline.

The Project involves the development of vast, untapped natural gas reserves off the northern coast of Mozambique. With cooperation and support from the Government of Mozambique—one of the poorest and least developed countries in the world—a joint venture of seven leading energy companies has worked to develop those reserves. While the Project has

secured financing commitments from numerous public and private lenders, EXIM's loan is the Project's largest financing commitment. The loan is expected to support more than 16,000 jobs for American workers during the construction period alone, including jobs at 68 suppliers in 8 states and the District of Columbia—to say nothing of the thousands of other American jobs that this Project activity will indirectly support.[1] When completed, the Project will provide a critical source of natural gas—a dependable fuel that is far cleaner than other fossil fuels, such as coal and oil—and enhance the security of domestic and foreign energy supply.

For years, and across continents, Friends of the Earth has sought to prevent the Project's completion. These efforts have taken the form of lobbying, protest, and legal action against government and private lenders that have offered credit to the Project. But these efforts have failed. Most recently, FOE sought to invalidate UK Export Finance's $1.15 billion funding commitment to the Project, claiming that financing the Project violated the United Kingdom's climate commitments under the Paris Agreement. A U.K. appellate court rejected the argument, noting evidence that cleaner natural gas could reduce net emissions by displacing coal and oil consumption, R *ex rel.* Friends of the Earth Ltd. v. The Secretary of State for International Trade/UK Export Finance [2023] EWCA Civ 14 [¶ 52],[2] and the U.K. Supreme Court refused to review the case because it presented no "arguable point of law," R *ex rel.* Friends of the Earth Ltd. v. Sec'y of State for Int'l Trade/UK Export Finance UKSC 2023/0026.[3]

---

[1] EXIM, EXIM Board Unanimously Approves Amended Financing of U.S. Exports to Mozambique LNG Project and Support of More U.S. Jobs in Additional States, (May 14, 2020), https://www.exim.gov/news/exim-board-unanimously-approves-amended-financing-exports-mozambique-lng-project-and-support.

[2] The opinion is available at https://tinyurl.com/2m96as6m.

[3] The order is available at https://tinyurl.com/d6ran749.

2

In its latest effort to halt the Project, FOE asks this Court to invalidate EXIM's $4.7 billion loan based on a laundry list of meritless arguments. Although FOE did not challenge the loan in 2019 or 2020 and waited for more than four months before it filed its Complaint here, FOE now urges the Court to act "quickly" to prevent "continu[ing]" and "immediate, irreparable harm." ECF No. 13, at 2. Its principal challenge asserts that EXIM's Board lacked authority to act because it lacked a quorum. But the Board's three-member quorum—consisting of a Presidentially appointed and Senate-confirmed Board member and EXIM's acting President and First Vice President, who serve *ex officio* on the Board—had full authority to act under the plain text of the Vacancies Reform Act, 5 U.S.C. § 3341 *et seq.*, and EXIM's Charter, 12 U.S.C. § 635 *et seq.* Indeed, in 2021 President Biden designated *the same two senior EXIM employees*—who together possess nearly a century of experience at EXIM—to act in *the same two positions* to "*maintain the quorum on the Board of Directors* in accordance with EXIM's Charter."[4] Put simply, President Trump's decision to maintain EXIM's quorum by designating an acting EXIM President and First Vice President adhered to the plain text of the relevant statutes and the precedent established by the previous Administration. It violated no law.

The balance of FOE's arguments essentially rewrite the text of EXIM's Charter to require new economic and environmental reviews, invitations to comment, and Congressional notice any time EXIM amends an existing credit commitment. To be sure, Congress could have required those onerous steps for amendments to transactions that EXIM had already thoroughly vetted for years and approved—as EXIM has done here. But as the plain text of EXIM's Charter shows, Congress did not impose any such requirement.

---

[4] EXIM, *President Biden Authorizes Board Transition Steps* (July 21, 2021), https://tinyurl.com/3e7wsywh (emphasis added).

3

To address these issues fully and defend its interests, TEPMA1 seeks leave to intervene under Federal Rule of Civil Procedure 24. TEPMA1's interest is readily apparent: As the Project's operator and largest shareholder, it has a significant financial interest both in the loan proceeds and in the Project's timely completion and success. And as the Complaint makes plain, FOE's goal is not just to halt disbursement of the loan's proceeds, but also to prevent the Project from moving forward at all.[5] Under these circumstances, TEPMA1 is entitled to intervene as of right under Federal Rule of Civil Procedure 24(a), because (1) FOE's claim clearly implicates TEPMA1's interests in the loan proceeds and the Project's success; (2) TEPMA1's motion is timely; and (3) TEPMA1's interest qualifies as "a legally protected interest" that FOE's suit, if successful, would impair or impede. *See, e.g.*, *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998). Further, the government cannot adequately represent TEPMA1's interest given the divergence between TEPMA1's interest (in defending its private economic interests in the loan proceeds and the success of the Project) and the government's interest (which encompasses the public interest more generally, not just TEPMA1's private interest). *See, e.g.*, *Crossroads*, 788 F.3d at 321.

Alternatively, TEPMA1 requests permissive intervention under Federal Rule of Civil Procedure 24(b), because its defenses and EXIM's defenses share common questions of law and fact, and TEPMA1's intervention just seven days after service of the Complaint and three days after the filing of the preliminary injunction/partial summary judgment motion will result in no

---

[5] *See* Compl. ¶ 34, ECF No. 14 (alleging that "[t]he Project would likely not be able to proceed without this funding from EXIM").

delay or prejudice to the existing parties. *See* ECF Nos. 11-13. TEPMA1 is fully prepared to comply with all deadlines set by the Court.

If the Court allows it to intervene, TEPMA1 respectfully requests that the Court permit it to file its Answer or other responsive pleading pursuant to Federal Rule of Civil Procedure 24(c) and Local Civil Rule 7(j) by the same deadline as the Federal Defendants. *See Kinsella v. BOEM*, No. 1:22-cv-02147-JMC, Dkt. 43 (D.D.C. Nov. 7, 2022) (granting intervention in challenge to federal project approvals, and ordering it to file its Answer or other responsive pleading on same date as federal defendants); *infra* Section III.

Pursuant to Local Civil Rule 7(m), counsel for TEPMA1 has conferred with counsel for Plaintiff FOE and the Federal Defendants.[6] Counsel for the Federal Defendants represented that the Federal Defendants do not oppose this motion. Counsel for Plaintiffs represented that Plaintiffs are unable to take a position at this time. TEPMA1 respectfully submits that its intervention should be granted.

## BACKGROUND

Natural gas has long been recognized as the cleanest fossil fuel and a key part of the transition to more sustainable energy future. Mozambique's Area 1 holds some 65 trillion cubic feet of recoverable natural gas—the equivalent of a 12 billion-barrel oil field. TEPMA1 operates the Project on behalf of a joint venture of energy companies from around the world seeking to develop this important energy resource in cooperation with the Government of Mozambique. The Project is not just important to meeting global energy demand; it is an important part of Mozambique's national development plan. According to the United Nations Department of

---

[6] The Federal Defendants are the Export-Import Bank of the United States, Board Member Spencer Bachus, III, Acting President James Cruse, and Acting First Vice President James Burrows.

5

Economic and Social Affairs, Mozambique is among the world's least developed countries with a gross national income of just $491 per capita—less than $1.50 per day.[7]

EXIM's Board unanimously approved a loan to support the use of U.S. goods and services in the Project's construction in September 2019. Before that, the Project underwent nearly a decade of careful study, environment, social, and economic review, and opportunity for public participation, consistent with EXIM's Charter and policies. Starting in 2011, nine years before approval, the Project conducted a multi-year comprehensive environmental and social impact assessment. Environmental and Social Impact Assessment (captured Dec. 17, 2015), available at https://tinyurl.com/3nu3ty3j. This assessment led to the development of an Environmental and Social Management Plan to "manage project-related environmental, social and health risks and impacts on the Afungi peninsula and wider host environment" and outline ways "to enhance positive impacts and opportunities associated with project development." *Id.* The Project also conducted support studies related to migration, gender effects, and human rights. *Id.* After the Project concluded its nearly five years of review, EXIM made the environmental and social impact assessment publicly available on its website in January 2016, still three years before the Agreement received approval. EXIM, Pending Transactions for Environment Category A and B Projects (captured Oct. 25, 2016), available at https://tinyurl.com/2znhhkpb.

More than two years after publicizing the environmental and social impact assessment, EXIM published a "notice of intent to conduct detailed economic analysis" in the Federal Register. 83 Fed Reg 61379 (Nov. 29, 2018). This kicked off a public comment period, where EXIM sought comments from the public related to the economic effects of funding the Project. EXIM's

---

[7] U.N. Dep't of Economic & Social Affairs, *Least Developed Country Category: Mozambique Profile*, https://policy.desa.un.org/themes/least-developed-countries-category/least-developed-country-category-mozambique-profile (last visited July 24, 2025).

6

economic analysis, conducted with the benefit of public comment, was finalized on August 6, 2019. *See* Pls.' Ex. 13-5 at 17. The economic analysis concluded that an LNG supply-demand gap would open "in the early-to-mid 2020s," leading to a 5-10% gap by 2024 that "would grow from there." *Id.* at 22. Looking 10-15 years into the future, the economic analysis noted "that LNG demand is set to grow substantially," and that "it is unlikely that structural oversupply develops in the LNG market any time in the foreseeable future." *Id.* at 23.

After finalizing the economic analysis, EXIM notified Congress about the Project's application for a final commitment in August 2019. *See* ECF No. 13-4, at 3. EXIM also sought public comment on the Project's application for a final commitment before approval. *See* 84 Fed. Reg. 44303 (Aug. 23, 2019).

EXIM's Board unanimously approved the loan in September 2019. As EXIM has explained, the loan serves multiple U.S. strategic interests. It advances EXIM's mission "to contribute to the employment of United States workers" by "financing . . . exports of goods and services," 12 U.S.C. § 635(a)(1)—supporting more than 16,000 jobs across the United States.[8] It advances the United States' competitive position against other countries, including China. *Id.* And it advances humanitarian goals, as well, as part of the first Trump Administration's Prosper Africa Initiative—a "whole-of-government economic effort to substantially increase two-way trade and investment between the United States and Africa" and to "advance American and African prosperity." *Id.*

---

[8] EXIM, *EXIM Board Unanimously Approves Amended Financing of U.S. Exports to Mozambique LNG Project and Support of More U.S. Jobs in Additional States* (May 14, 2020), https://www.exim.gov/news/exim-board-unanimously-approves-amended-financing-exports-mozambique-lng-project-and-support.

In 2021, however, attacks by Al-Shabaab insurgents in Mozambique forced TEPMA1 to declare *force majeure* and suspend work on the Project. But due to an improved security situation, EXIM's Board unanimously approved an Amendment to the credit agreement on March 19, 2025 that "extends certain dates and makes related changes" to allow the already-authorized loan to be disbursed as the Project proceeds on its adjusted schedule.[9] As EXIM explained, the Amendment "contains no material change from the original approval." *Id.*

FOE now sues EXIM to invalidate the loan and—it hopes—bring the Project to a halt again. Despite having waited four months after EXIM approved the amendment—and nearly six years after EXIM approved the loan—FOE claims that this Court must act "quickly" to prevent "continu[ing]" and "immediate, irreparable harm" from the Project. ECF No. 13, at 2.

TEPMA1 now seeks to intervene to protect its financial interest in the funds that it will receive under the loan EXIM has approved and in the timely completion and success of the Project that FOE seeks to prevent through this lawsuit. For the reasons explained below, TEPMA1 easily meets the standards for intervention as of right and, alternatively, permissive intervention.

## ARGUMENT

Under well settled precedent, TEPMA1 should be allowed to intervene to defend its significant and legally protected financial interests in the proceeds from the loan that EXIM has authorized and the Project that FOE seeks to prevent. TEPMA1 satisfies the requirements for both intervention as of right and permissive intervention.

---

[9] EXIM, *EXIM Board of Directors Votes to Proceed with $4.7 Billion LNG Equipment and Services Transaction After Four-Year Delay* (March 19, 2025), https://www.exim.gov/news/exim-board-directors-votes-proceed-47-billion-lng-equipment-and-services-transaction-after.

8

## I. TEPMA1 HAS A RIGHT TO INTERVENE UNDER RULE 24(A)

Under Rule 24(a),

> the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). In this Circuit, intervention as of right should be granted where the movant establishes "1) timeliness of the application to intervene; 2) a legally protected interest; 3) that the action, as a practical matter, impairs or impedes that interest; and 4) that no party to the action can adequately represent the potential intervenor's interest." *Crossroads*, 788 F.3d at 320. And, although the D.C. Circuit recently clarified that an intervenor seeking the same relief as a party (here, the Federal Defendants) need not have Article III standing, *Inst. S'holder Servs., Inc. v. SEC*, __ F.4th __, No. 24-5105, 2025 WL 1802786, at *4 n.3 (D.C. Cir. 2025), TEPMA1 nevertheless has Article III standing. *See infra* Section I.E. TEPMA1 easily satisfies each of those requirements.

### A. TEPMA1's Motion Is Timely

"[T]he requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014). Timeliness "is 'to be judged in consideration of all the circumstances'" in relation to the timeline for proceedings in the case. *Id.* (quoting *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001)). Here, TEPMA1 is filing this motion seven days after FOE completed service and three days after it moved for a preliminary injunction. There is no risk of prejudice to the existing parties, who have not yet agreed to a proposed schedule for FOE's motion. Given these circumstances, TEPMA1's intervention is timely. TEPMA1 is fully prepared to meet any schedule set by this Court, including by adhering to any schedule agreed to for

9

responding to FOE's motion. Courts have permitted intervention by parties that have waited months before seeking to intervene. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (holding that a motion to intervene was timely where it was filed "less than two months after the plaintiffs filed their complaint"); *Mova*, 140 F.3d at 1076 (similar); *Appleton v. FDA*, 310 F. Supp. 2d 194, 197 (D.D.C. 2004) (similar). TEPMA1's prompt intervention here satisfies the timeliness requirement.

### B.   TEPMA1 Has a Legally Protected Interest

A legally protected interest requires only "an interest relating" to the agency decision "which is the subject of the action," *i.e.*, where, as here, "a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads*, 788 F.3d at 317, 320. Under this test, intervention may be permitted even when an agency decision only benefits the proposed intervenor "indirectly" or "tangentially." *Crossroads*, 788 F. 3d at 318. TEPMA1 easily satisfies this test.

Here, TEPMA1 has more than just an "interest relating" to the Amendment: The entire purpose of the loan is to fund the Project for which TEPMA1 serves as the largest shareholder and operator, including expenses incurred by TEPMA1 related to Project development. If successful, FOE's lawsuit would "vacate" EXIM's loan approval and "[p]ermanently enjoin [EXIM] from disbursing any funds" from the loan. Compl. at 90. TEPMA1's "benefit[] from agency action" and that benefit's potential "remov[al]" if FOE prevails constitutes a legally protected interest under D.C. Circuit precedent. *Crossroads*, 788 F.3d at 317. Indeed, in analogous cases, courts routinely recognize that companies awarded government contracts have standing to intervene in challenges to the contracting decision. *See, e.g.*, *Friends of Earth v. Haaland*, No. 21-cv-2317, 2022 WL 136763, at *2 (D.D.C. Jan. 15, 2022) (recognizing that the prevailing bidder gained both standing and a legally protected interest warranting intervention).

10

Moreover, establishing Article III standing itself satisfies the requirement of a legally protected interest for purposes of the intervention inquiry, *see Crossroads*, 788 F.3d at 320, and TEPMA1 has standing under this Circuit's precedent, as set forth below, *see infra* Section I.E.

### C. This Action May Impair TEPMA1's Interest

To determine whether this action may impair TEPMA1's interest, the Court looks "to the 'practical consequences' of denying intervention." *Fund for Animals*, 322 F.3d at 735 (quoting *NRDC v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977)). Here, if TEPMA1's motion is denied and FOE succeeds in the case, TEPMA1 would be unable to obtain funds under the loan EXIM has approved. That is the entire thrust of FOE's requested relief, as it seeks to "[p]ermanently enjoin [EXIM] from disbursing funds pursuant to the March 13, 2025 final approval" and "vacate" that action. Compl. at 90. That is a sufficient interest to support intervention. *See Crossroads*, 788 F.3d at 317; *Cayuga Nation v. Zinke*, 324 F.R.D. 277, 282 (D.D.C. 2018) ("Simply put, a decision in Plaintiffs' favor in this case would impair Putative Intervenor's interests because Plaintiffs are attacking a decision that was favorable to the Putative Intervenor . . . .").

### D. No Existing Party Adequately Represents TEPMA1's Interest

The inadequate-representation requirement "is not onerous," and "[t]he applicant need only show that representation of his interest 'may be' inadequate, not that representation will in fact be inadequate." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.").

That low standard is clearly satisfied here because government agencies generally do not adequately represent private parties' interests. Government entities are "charged by law with representing the public interest of its citizens." *Dimond*, 792 F.2d at 192–93 (citation omitted)

11

Private intervenors like TEPMA1, on the other hand, typically seek "to protect a more narrow and parochial financial interest not shared by the citizens." *Id.* at 193 (citation omitted). Not only *might* a government agency not focus narrowly on that interest when defending a claim, but the government "would be shirking its duty were it to advance this narrower interest at the expense of its representation of the general public interest." *Id.*; *see also Crossroads*, 788 F.3d at 321 ("[W]e look skeptically on government entities serving as adequate advocates for private parties."); *Fund For Animals*, 322 F.3d at 735–37 ("For just these reasons, we have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors."). In sum, "[i]t is well established in this Circuit that 'governmental entities do not adequately represent the interests of aspiring intervenors' because the government's obligation is to represent the interests of its citizens, whereas an intervenor's interests are often more specific." *WildEarth Guardians v. Jewell*, No. CV 16-1724, 2016 WL 11720188, at *3 (D.D.C. Nov. 23, 2016).

These principles apply fully here. Although EXIM (like any government agency) obviously has an interest in its actions being declared lawful and an interest in promoting U.S. exports through the loan, it does not have the same financial interest in the loan proceeds and the Project as TEPMA1. TEPMA1 satisfies the inadequate-representation requirement.

### E. TEPMA1 Has Article III Standing

Under Supreme Court precedent, "intervenors that seek the same relief sought by at least one existing party need not" demonstrate Article III standing. *Inst. S'holder Servs.*, 2025 WL 1802786, at *4 n.3 (casting doubt on prior D.C. Circuit cases based on *Little Sisters of the Poor Sts. Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.4 (2020)). Because TEPMA1 seeks a judgment rejecting FOE's claims, it seeks the "same relief" as the Federal Defendants and need not demonstrate Article III standing.

Even were TEPMA1 required to demonstrate standing, it easily satisfies the requirements of "injury in fact, causation, and redressability." *Crossroads*, 788 F.3d at 316 (citation omitted). If FOE is successful, then TEPMA1 will be unable to receive proceeds from the $4.7 billion loan that EXIM has approved. Indeed, the entire goal of FOE's lawsuit is to disrupt EXIM's financing of the Project in hopes that doing so will cause the Project to fail. "[E]ven a small financial injury is enough" to demonstrate standing. *Competitive Enter. Inst. v. FCC*, 970 F.3d 372, 384 (D.C. Cir. 2020). TEPMA1 easily clears the bar here. *See also Crossroads*, 788 F.3d at 317 ("Our cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit."); *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 937 F. Supp. 2d 18, 34 (D.D.C. 2013) (recognizing that "interfering with the business operations of" an entity confers standing); *County of San Miguel v. MacDonald*, 244 F.R.D. 36, 44-46 (D.D.C. 2007) (recognizing that a threat to putative intervenors' "business operations" conferred both standing and showed a legally protected interest); *see also Fund for Animals*, 322 F.3d at 733 (holding that a "threatened loss" in the event of an adverse ruling sufficed to confer standing). TEPMA1's harms, moreover, are plainly traceable to the relief that FOE seeks—vacating EXIM's approval of the Amendment and enjoining it from disbursing loan proceeds.

## II.   ALTERNATIVELY, PERMISSIVE INTERVENTION IS PROPER UNDER RULE 24(B)

At a minimum, TEPMA1 should be granted permissive intervention. Permissive intervention is proper where the movant "has a claim or defense that shares with the main action a common question of law or fact" and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (b)(3). Here, TEPMA1 seeks to join the Federal Defendants' defense and will present arguments that arise from the same

13

facts. *See Ass'n of Wash. Bus. v. EPA*, No. 23-cv-3604 (DLF), 2024 WL 3225937, at *11 (D.D.C. June 28, 2024) (holding that offering defensive arguments and seeking the same relief as a defendant "easily satisfy[ies] the liberal 'claim or defense' requirement'"); *Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 14 (D.D.C. 2019) ("The movants seek to defend the Department's decision . . . . That they share this defense in common with the Department is sufficient under Rule 24(b)(1)(B)."). And as already stated, intervention will not result in delay or prejudice, as the case began less than two weeks ago and TEPMA1 is prepared to meet any deadlines set by the Court. Thus, the Court should allow permissive intervention under Rule 24(b) if it does not allow intervention of right under Rule 24(a).

### III. TEPMA1 SHOULD BE PERMITTED TO FILE ITS ANSWER OR RESPONSIVE PLEADING BY THE SAME DEADLINE AS FEDERAL DEFENDANTS

If the court permits intervention, TEPMA1 respectfully seeks leave to file its Answer or other responsive pleading pursuant to Federal Rule of Civil Procedure 24(c) and Local Rule 7(j) by the same deadline as the Federal Defendants. TEPMA1's motion informs the Court and the parties of the nature and basis for its need to participate in this case, such that the Court may adequately evaluate the issues and grant TEPMA1 intervention without a corresponding pleading. Deferring the deadline for TEPMA1 to file an Answer or other response to align with EXIM's deadline will further judicial economy by not prematurely requiring such filings until EXIM is also required to file. Courts in this District grant such requests routinely. *See, e.g., Am. Soybean Ass'n v. EPA*, No. 1:20-cv-03190, Dkt. 20 (D.D.C. Nov. 13, 2020) (granting motion to intervene and to defer filing responsive pleading under Rule 24(c) to same date as federal defendant); *Nat'l Tr. for Historic Pres. v. Semonite*, No. 1:17-cv-01574-RCL, Dkt. 24 (D.D.C. Sept. 12, 2017) (granting intervention and allowing intervenor's answer to later be filed on same date as federal defendants' answer); *Kinsella v. BOEM*, No. 1:22-cv-02147-JMC, Dkt. 43 (D.D.C. Nov. 7, 2022)

14

(granting South Fork Wind intervention and ordering it to file its Answer or other responsive pleading under Rule 24(c) on same date as federal defendants); *see also Save Long Beach Island v. U.S. Dep't of Commerce*, No. 3:23-cv-01886-RK-JBD, Dkt. 18 (D.N.J. May 19, 2023) (granting Ørsted intervention and ordering it to file its Answer or other responsive pleading under Rule 24(c) on same date as federal defendants). Granting this request will not cause any delay in this litigation, as the Federal Defendants have not yet responded to the Complaint.

## CONCLUSION

For the foregoing reasons, TEPMA1's motion to intervene should be granted.

Respectfully submitted,

Dated: July 24, 2025

/s/ *Andrew D. Prins*
Andrew D. Prins (DC Bar No. 998490)
Stacey L. VanBelleghem (DC Bar No. 988144)
Jonathan L. Williams (DC Bar No. 999708)
Rachael L. Westmoreland* (DC Bar No. 90034032)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: andrew.prins@lw.com
      stacey.vanbelleghem@lw.com
      jonathan.williams@lw.com
      rachael.westmoreland@lw.com

Nicholas L. Schlossman (DC Bar No. 1029362)
LATHAM & WATKINS LLP
300 Colorado Street, Suite 2400
Austin, TX 78701
Tel:  (737) 910-7300
Fax:  (737) 910-7301
Email: nicholas.schlossman@lw.com

*Application for admission to the U.S. District Court for the District of Columbia pending*

*Attorneys for Proposed Defendant-Intervenor TotalEnergies EP Mozambique Area 1, Limitada*