UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

FRIENDS OF THE EARTH U.S., et al.,

       Plaintiffs,

    v.

EXPORT-IMPORT BANK OF THE
UNITED STATES, et al.,

       Defendants.

Civil Action No. 25-2235 (CJN)

---

**MOTION AND MEMORANDUM IN SUPPORT OF
<u>UNITED STATES DEFENDANTS' MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................. 1

BACKGROUND .................................................................................................... 2

I.    Amendment to Bank's Previously Approved Direct Loan .............................. 2

II.    Statutory Provisions Relevant to Plaintiffs' Claim to Standing........................ 4

PROCEDURAL HISTORY .................................................................................... 6

LEGAL STANDARD ............................................................................................ 7

ARGUMENT ......................................................................................................... 8

I.    Plaintiffs Fail to Plead Organizational Standing.......................................... 9

      A.    Alleged Failure to Provide Notice and Comment Does Not Provide Standing .................................................................................... 9

      B.    A Predicted Need to Help Mozambicans Ameliorate Project Harms Does Not Provide Standing ...................................................... 12

      C.    Instability in Cabo Delgado Does Not Provide Standing ..................... 14

II.    Plaintiffs Fail to Plead Informational Standing .................................... 15

III.    Plaintiffs Fail to Plead Representational Standing........................... 18

IV.    Plaintiffs Fail to Plead Third-Party Standing.................................. 20

CONCLUSION ...................................................................................................... 22

i

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Air Excursions LLC v. Yellen*,
  66 F.4th 272 (D.C. Cir. 2023) ................................................................................................ 8

*Am. Sports Council v. Dep't of Educ.*,
  850 F. Supp. 2d 288 (D.D.C. 2012) ...................................................................................... 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................ 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................. 21

*Chesapeake Climate Action Network v. Exp.-Imp. Bank of the U.S.*,
  78 F. Supp. 3d 208 (D.D.C. 2015) ................................................................................. 11, 12

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .......................................................................................................... 8, 12

*Coal. for Humane Immigr. Rts. v. Dep't of Homeland Sec.*,
  Civ. A. No. 25-0943 (TNM), 2025 WL 1078776 (D.D.C. Apr. 10, 2025) ............................ 14

*Conn. Light & Power Co. v. Nuclear Regul. Comm'n*,
  673 F.2d 525 (D.C. Cir. 1982) .............................................................................................. 11

*Ctr. for Biological Diversity v. Dep't of Interior*,
  144 F.4th 296 (D.C. Cir. 2025) ............................................................................................. 20

*Ctr. for Biological Diversity v. Int'l Dev. Fin. Corp.*,
  77 F.4th 679 (D.C. Cir. 2023) ............................................................................................... 18

*Ctr. for Democracy & Tech. v. Trump*,
  507 F. Supp. 3d 213 (D.D.C. 2020) ...................................................................................... 12

*Delta Air Lines, Inc. v. Exp.-Imp. Bank of the U.S.*,
  718 F.3d 974 (D.C. Cir. 2013) ................................................................................................ 6

*Equal Rts. Ctr. v. Post Props., Inc.*,
  633 F.3d 1136 (D.C. Cir. 2011) .............................................................................................. 9

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015) ......................................................................................... 9, 13

*Friends of Animals v. Jewell*,
  828 F.3d 989 (D.C. Cir. 2016) ........................................................................................ 15, 18

*Hunt v. Wash. State Apple Adver. Comm'n*,
  432 U.S. 333 (1977) .............................................................................................................. 18

*In re Endangered Species Act Section 4 Deadline Litig.*,
  277 F.R.D. 1 (D.D.C. 2011) .................................................................................................. 10

*Indus. Energy Consumers of Am. v. Fed. Energy Regul. Comm'n*,
  125 F.4th 1156 (D.C. Cir. 2025) ........................................................................................... 18

*Info. Ctr. v. Fed. Aviation Admin.*,
  892 F.3d 1249 (D.C. Cir. 2018) ............................................................................................ 13

*Int'l Bhd. of Teamsters v. Transp. Sec. Admin.*,
  429 F.3d 1130 (D.C. Cir. 2005) ............................................................................................ 10

*Kareem v. Haspel*,
    986 F.3d 859 (D.C. Cir. 2021) ......................................................................... 8

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ........................................................................................... 8

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) ......................................................................................... 21

*Lepelletier v. FDIC*,
    164 F.3d 37 (D.C. Cir. 1999) ......................................................................... 20

*Lewis v. Mutond*,
    62 F.4th 587 (D.C. Cir. 2023) ..................................................................... 3, 4

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ...................................................................... 7, 9, 13, 19

*Nat'l Ass'n for Latino Cmty. Asset Builders v. Consumer Fin. Prot. Bureau*,
    581 F. Supp. 3d 101 (D.D.C. 2022) ............................................................... 14

*Nat'l Ass'n of Home Builders v. EPA*,
    667 F.3d 6 (D.C. Cir. 2011) ........................................................................... 11

*PETA v. Dep't of Agric.*,
    797 F.3d 1087 (D.C. Cir. 2015) ....................................................................... 9

*Powers v. Ohio*,
    499 U.S. 400 (1991) ......................................................................................... 20

*Pub. Citizen, Inc. v. Nat'l Highway Transp. Safety Admin.*,
    489 F.3d 1279 (D.C. Cir. 2007) ..................................................................... 14

*Pub. Citizen, Inc. v. Trump*,
    297 F. Supp. 3d 6 (D.D.C. 2018) ................................................................... 18

*Safari Club Int'l v. Zinke*,
    Civ. A. No. 15-1026 (RCL), 2017 WL 8222114 (D.D.C. May 2, 2017)................ 14

*Sierra Club v. EPA*,
    754 F.3d 995 (D.C. Cir. 2014) ....................................................................... 11

*Sierra Club v. Fed. Energy Regul. Comm'n*,
    867 F.3d 1357 (D.C. Cir. 2017) ....................................................................... 6

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ......................................................................................... 19

*Turlock Irrigation Dist. v. Fed. Energy Regul. Comm'n*,
    786 F.3d 18 (D.C. Cir. 2015) ......................................................................... 13

*United States v. Facebook, Inc.*,
    456 F. Supp. 3d 105 (D.D.C. 2020) ............................................................... 10

*United States v. Hunt*,
    843 F.3d 1022 (D.C. Cir. 2016) ..................................................................... 19

*United Transp. Union v. Interstate Com. Comm'n*,
    891 F.2d 908 (D.C. Cir. 1989) ....................................................................... 20

*Warth v. Seldin*,
    422 U.S. 490 (1975) ......................................................................................... 20

Statutes

5 U.S.C. § 701 ................................................................................................................ 6

12 U.S.C. § 635(a)(1) ..................................................................................................... 2

12 U.S.C. § 635(e)(7) ................................................................................................. 5, 16

12 U.S.C. § 635a(c)(10)(A) ..................................................................................... 4, 15, 16

12 U.S.C. § 635a(c)(10)(D) ...................................................................................... 5, 15, 16

12 U.S.C. § 635i-5 ......................................................................................................... 6

12 U.S.C. § 635i-5(a)(1) ................................................................................................ 17

44 U.S.C. § 1507 ........................................................................................................ 4, 5

Defendants Export-Import Bank of the United States ("EXIM" or the "Bank"); James Cruse, in his official capacity as Acting President and Chairman; James Burrows Jr., in his official capacity as Acting First Vice President and Vice Chairman; and Spencer Bachus III, in his official capacity as Member of the Board of Directors; through undersigned counsel, respectfully move this Court to dismiss the Complaint (ECF No. 1) of Plaintiffs Friends of the Earth U.S. and Justiça Ambiental pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction.

## INTRODUCTION

Plaintiffs are Friends of the Earth US ("Friends of the Earth"), a U.S. "membership-based [environmental] organization," and Justiça Ambiental, a Mozambique "nonprofit environmental organization." Compl. ¶¶ 22, 27. For at least a decade, they have "dedicated extensive resources" to investigate and advocate regarding a Mozambique-based liquefied natural gas project. *Id*. ¶¶ 254-292. This has included efforts to engage the Bank about a direct loan up to $5 billion that was sought in 2015 by the lead sponsor for the project. *Id*. ¶ 77. As Plaintiffs acknowledge, the direct loan for the project was approved by the Bank's Board of Directors (the "Board") on September 26, 2019. *Id*. ¶ 85.

In April 2021, however, the "consortium led by French oil giant TotalEnergies SE" declared *force majeure* and halted activities at the project site because of a conflict between the Mozambican government and Islamic insurgents. *Id*. ¶¶ 1-2, 105. The "insurrection and declaration of *force majeure* delayed when the Project would come online" by four years. *Id*. ¶ 372. Plaintiffs understand that "Total wants to restart the Project," *id*. ¶ 7, and so it should come as no surprise to them that in March 2025 the Bank's Board approved an amendment to the previously approved direct loan transaction that "extends certain dates" in previously executed finance documents (hereinafter, the "Amendment"). *Id*. ¶ 182.

In July 2025, Plaintiffs filed the instant suit to vacate the approval of the Amendment and enjoin the disbursement of bank funds under the 2019-approved loan because of alleged procedural deficiencies in the March 2025 approval. For purposes of this Motion, though, the question is whether Plaintiffs have plausibly alleged standing to challenge the Board's Amendment vote. They have not.

Plaintiffs attempt to claim that they have been injured as organizations because they were denied "statutorily mandated" advance notice, information, and comment regarding the March 2025 action. But the relevant statues, which are plainly applicable to *applications* in support of *proposed* transactions, and not to amendments to already approved transactions, show Plaintiffs have not plausibly suffered an "informational injury." Plaintiffs also contend that they will have to engage in additional or alternative services as a result of the Board's action, but as explained below these alleged harms are speculative, not actual "impairments" of the organizations, and not causally connected to an Amendment that merely extended certain financing dates. Plaintiffs' additional allegations claiming representational standing on behalf of a single Friends of the Earth member and third party standing on behalf of unidentified Mozambicans also easily fail under well-established precedent. Therefore, Defendants respectfully request that the Court dismiss the Complaint for a failure to plausibly allege standing and subject matter jurisdiction.

## BACKGROUND

### I.     Amendment to Bank's Previously Approved Direct Loan

The Bank is the official export credit agency of the United States. Compl. ¶ 32. It is an independent Executive Branch agency with a mission of supporting American jobs by facilitating the export of U.S. goods and services. *Id.* ¶ 33, *see also* 12 U.S.C. § 635(a)(1).

In April 2015, a consortium initially led by Anadarko Petroleum, a U.S. company, applied to the Bank for a direct loan of up to $5 billion to support the Mozambique LNG (Liquid Natural

Gas) Project (the "Project"), a proposed $20 billion project to extract, process, and export liquefied natural gas. Compl. ¶¶ 74, 77. Occidental Petroleum, a U.S. corporation that had acquired Anadarko, briefly led the consortium until TotalEnergies SE ("Total"), a French company, acquired Occidental's interest in the Project. *Id*. ¶¶ 85-86. On September 26, 2019, the Bank's Board of Directors "approved a $5 billion loan for the Project," which was amended to $4.7 billion on May 14, 2020. *Id*.

The Project is located in the Mozambique province of Cabo Delgado, which has experienced "conflict between the Mozambican government and insurgents known as Al-Shabab . . . or Ahl al-Sunna wa al-Jamma." *Id*. ¶ 87. The conflict, which preceded the Bank's approval of the loan, ultimately led Total to declare force majeure on April 26, 2021, which halted all commercial activities at the Project site. *Id*. ¶¶ 87, 105. As of the filing of the Complaint, *force majeure* had not been lifted, although reportedly Total is preparing to ask Mozambique's approval to lift *force majeure*. *Id*. ¶ 128.

What Plaintiffs challenge in this lawsuit is an action of the Bank's Board on March 13, 2025. *Id*. ¶ 1. Plaintiffs allege that the Bank's Board gave "final approval of a $4.7 billion loan" and calls this a "new loan" or the "2025 loan." *See, e.g., id*. ¶ 1, 14-15, 124, 146, 181. More accurately, as stated in the Bank's press release cited and quoted in the Complaint, the Board had simply "approved the second amendment of [the] 2019 direct loan of up to $4.7 billion."[1] "This second amendment, which contains no material change from the original approval and thus is not subject to additional U.S. Congressional notification, extends certain dates" in previously executed

---

[1]    Plaintiffs cite and partially quote from the Bank's March 2025 press release. *Id*. ¶¶ 182, 190, 192. That release may be found at https://www.exim.gov/news/exim-board-directors-votes-proceed-47-billion-lng-equipment-and-services-transaction-after. The Court may take judicial notice of facts incorporated by reference into the complaint. *See, e.g., Lewis v. Mutond*, 62 F.4th 587, 590 (D.C. Cir. 2023).

finance documents because of a "four-year delay" in operations "following a security related force majeure declaration by the project operator in April 2021." *Id.*[2]

## II.    <u>Statutory Provisions Relevant to Plaintiffs' Claim to Standing</u>

Plaintiffs premise their standing, in part, on alleged failures to comply with certain statutory procedures.  Defendants summarize the requirements of and the Bank's compliance with those statutory provisions here.  As will be evident, these provisions apply to the Bank's consideration of applications for new financing and not amendments to previously approved transactions.

Plaintiffs rely on 12 U.S.C. § 635a(c)(10)(A), (D).  *See id.* ¶¶ 44, 47, 144.  Those provisions explicitly apply to the Board's consideration of an application for Bank financing.  "Before any meeting of the Board for final consideration of a long-term transaction the value of which exceeds $100,000,000 . . . the Bank shall provide a notice and comment period." 12 U.S.C. § 635a(c)(10)(A).  Specifically, the "application proposing the transaction" to the Bank must be noticed in the Federal Register and provide at least 25 days for submission of "comments on the application." *Id.* § 635a(c)(10)(C)(i).  The Bank did that in 2019 when it considered the proposed loan.  *See* Application for Final Commitment for a Long-Term Loan or Financial Guarantee in Excess of $100 Million: AP087889XX, 84 Fed. Reg. 44304-01 (Aug. 23, 2019), https://www.federalregister.gov/d/2019-18153.[3]  The notice informed the public that the Bank "received an application for final commitment for a long-term loan or financial guarantee" for the Project, that comments received within the comment period would be presented to the Board "prior to final action on this Transaction," and that further information regarding "the final decision for

---

[2]    The summary meeting minutes for the Board's March 13, 2025 meeting may be found at https://www.exim.gov/news/minutes/board-meeting-minutes-2025-03-13.

[3]    "The contents of the Federal Register shall be judicially noticed . . . cited by volume and page number."  44 U.S.C. § 1507.

this transaction" would be posted to the Bank's website. *Id.* Total's application for financing was considered in 2019, and Plaintiffs allege that the Bank complied with the above statutory provisions in 2019. *See* Compl. ¶¶ 84-85.

A related provision, 12 U.S.C. § 635a(c)(10)(D), provides a "[p]rocedure for materially changed applications." *Id.* Only "[i]f a material change is made to an application" after notice is published, the Bank must publish a "revised notice of the application" and provide an additional comment period. *Id.* § 635a(c)(10)(D)(i). A "material change, with respect to an application for loan or guarantee" is defined to "include[] an increase of at least 25 percent in the amount of a loan" requested in the pending application.

Plaintiffs cite another provision, 12 U.S.C. § 635(e)(7). Compl. ¶¶ 51-52, 147, 149. This statutory provision states that "[i]f, in making a determination . . . with respect to a loan or guarantee, the Bank conducts a detailed economic impact analysis," the Bank must consider the views of the public and interested parties solicited through notice and comment. 12 U.S.C. § 635(e)(7)(A), (B). In 2018, while considering the application for financing, the Bank published a notice in the Federal Register of its intent to conduct such a detailed economic impact analysis, in accordance with § 635(e)(7)(B)(i). *See* Intent to Conduct a Detailed Economic Impact Analysis, 83 Fed. Reg. 61379-01 (Nov. 29, 2018), https://www.federalregister.gov/d/2018-25535.

Congress also provided a "[p]rocedure regarding materially changed applications" whereby the Bank would need to publish a revised notice and provide an additional comment period *if* the Bank had the "intent" to conduct a detailed economic impact analysis of the application for financing. Id. § 635(e)(7)(B)(iii). Only if "a material change is made to an application for a loan or guarantee," must the Bank publish a revised notice of intent and provide for a comment period. 12 U.S.C. § 635(e)(7)(B)(iii)(I). A "material change" with "respect to an

application" is statutorily defined as "a change of at least 25 percent in the amount of a loan or guarantee requested in the application" or "a change in the principal product to be produced as a result" of the activity facilitated by the loan. 12 U.S.C. § 635(e)(7)(B)(iii)(II).

Plaintiffs also rely on 12 U.S.C. § 635i-5. Compl. ¶¶ 56-57. This provision states that the Bank shall "establish procedures" to consider "environmental effects" of funded projects. 12 U.S.C. § 635i-5(a)(1). Plaintiffs admit that the Bank "implemented this statutory mandate by adopting its Environmental and Social Due Diligence Procedures and Guidelines. *Id*. ¶ 58. The Bank's Environmental and Social Due Diligence Procedures and Guidelines are available online (https://www.exim.gov/policies/exim-bank-and-environment/procedures-and-guidelines). "The objective of EXIM Bank's Environmental and Social Due Diligence Procedures is to require only the extent and detail of environmental and social information that is necessary to enable EXIM Bank to evaluate and consider the environmental and social risks and impacts ('risks and impacts') of a proposed transaction[.]" *Id*., Part II.

## PROCEDURAL HISTORY

Plaintiffs filed suit on July 14, 2025. They bring nine claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*[4] They allege that, in approving the 2025 Amendment, the Bank violated:

---

[4] Plaintiffs claim violations of the National Environmental Policy Act and the Export-Import Bank Act, but neither statute provides a private right of action, so the claims are properly reviewed under the APA. *Sierra Club v. Fed. Energy Regul. Comm'n*, 867 F.3d 1357, 1367 (D.C. Cir. 2017) ("because NEPA does not create a private right of action, we can entertain NEPA-based challenges only under the [APA] and its deferential standard of review"); *Delta Air Lines, Inc. v. Exp.-Imp. Bank of the U.S.*, 718 F.3d 974, 977 (D.C. Cir. 2013) ("In sum, the Bank's actions in this case are subject to judicial review to determine whether the Bank complied with the Bank Act or otherwise acted in an arbitrary and capricious manner.").

1.  Section 706(2)(A) and (C) of the APA because two of the three board members were not Senate-confirmed and therefore there was no quorum. Compl. ¶¶ 349-56.

2.  Section 706(2)(A) and (C) of the APA because the Project would allegedly over-subsidize U.S. exporters rather than just neutralize the effect of foreign export credit agencies. *Id.* ¶¶ 357-63.

3.  Section 706(2)(A) and (D) of the APA because the Bank allegedly should have provided a notice and comment period before approving the 2025 Amendment. *Id.* ¶¶ 364-68.

4.  Section 706(2)(A) and (D) of the APA because the Bank allegedly failed to analyze the adverse economic effects the Project would have in the United States when production would begin. *Id.* ¶¶ 369-74.

5.  Section 706(2)(A) of the APA because the Project would allegedly cause "substantial injury" in the United States by producing thirty-four times the amount of liquefied natural gas produced in the United States. *Id.* ¶¶ 375-78.

6.  Section 706(2)(A) and (D) of the APA because the Bank allegedly failed to consider the Project's environmental, humanitarian, human rights, and social risks and to provide an opportunity to comment. *Id.* ¶¶ 379-90.

7.  Section 706(2)(A) of the APA because in light of the alleged environmental, humanitarian, human rights, and social risks connected to the Project, no amount of investigation or further inquiry could justify financing the Project. *Id.* ¶¶ 391-92.

8.  NEPA and the APA because the Bank allegedly failed to consider the effects that the Project will have on climate change, including in the United States. *Id.* ¶¶ 393-96.

9.  Section 706(1) of the APA because the Bank failed to provide statutorily required information. *Id.* ¶¶ 397-400.

On July 21, 2025, Plaintiffs moved for a preliminary injunction. Shortly thereafter, on July 24, 2025, TotalEnergies EP Mozambique Area 1, Limitada moved to intervene, which the Court granted on August 5, 2025.  *See* Min. Order (Aug. 5, 2025).

## LEGAL STANDARD

Under Rule 12(b)(1), a plaintiff bears the burden of establishing subject matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  At the motion to dismiss stage, that

means "the complaint must contain 'sufficient factual matter, accepted as true,' to support an inference of standing 'that is plausible on its face.'" *Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Courts do not assume the truth of legal conclusions or accept inferences that are unsupported by the facts set out in the complaint.  *Id.* (citations omitted).  Further, a court may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction.  *See Kareem v. Haspel*, 986 F.3d 859, 866 n.7 (D.C. Cir. 2021).

## ARGUMENT

"Federal courts are courts of limited jurisdiction" where it is "presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Central to this limitation is Article III, Section 2, which limits judicial authority to "Cases" or "Controversies."  U.S. Const. art. III, § 2.  As the Supreme Court has explained, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal quotation marks and citations omitted).  "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Id.*

And yet, usurping the powers of the political branches that established and operate the Bank is precisely what Plaintiffs attempt to do through their challenges to the Bank's Amendment to the already approved Project financing.  Plaintiffs' Complaint, though, fails to satisfy Article III's standing requirements, which require Plaintiffs to establish that they (1) suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of Defendants; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (internal quotation marks and citations omitted). And when, as here, "the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id*. at 562 (citations omitted).

As explained below, despite spending twenty pages of the Complaint attempting to plead standing, that effort is unsuccessful.

## I.    Plaintiffs Fail to Plead Organizational Standing

Plaintiffs first assert that they have been harmed directly as organizations. *See* Compl. ¶¶ 246-336. Alleging organizational standing is both similar to and distinct from establishing individual standing. "[L]ike an individual plaintiff," an organization must "show actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (quoting). But Plaintiffs must also satisfy the additional requirements of organizational standing, specifically that (1) the challenged conduct "injured the [organization's] interest" and (2), the organization "used its resources to counteract that harm." *PETA v. Dep't of Agric.*, 797 F.3d 1087, 1093 (D.C. Cir. 2015) (quoting *Equal Rts. Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1140 (D.C. Cir. 2011)). Importantly, to establish an injury to an organization's interest, an organization must show that the challenged conduct "perceptibly impair[s] the organization's ability to provide services" or causes an "inhibition of [its] daily operations." *Food & Water Watch*, 808 F.3d at 919. It is not enough to show that the organization's objectives or mission has been frustrated. *Id*.

### A.    Alleged Failure to Provide Notice and Comment Does Not Provide Standing

Plaintiffs allege a related injury of being "denied . . . advance notice" of the Bank's action in March 2025, which allegedly "prevented" Plaintiffs from "sharing information" about the

Project with community members in Mozambique, and being denied the opportunity to submit "formal comment" to the Bank, which allegedly "preclude[ed]" Plaintiffs from "presenting the concerns of Project impacted people and [Friends of the Earth's] members" to the Bank. Compl. ¶¶ 299-308. As a result, Plaintiffs allegedly have to "expend additional time and resources" to investigate the Project and to undertake other activities, such as engaging with Congress, the press, the Bank's Inspector's General, and other Project funders. *Id*. ¶¶ 302-303, 304-308.

First, as explained in detail above and below, *see infra* § II, Plaintiffs fail to plausibly allege that the Bank denied Plaintiffs legally required "advance notice" of and "formal comment" on the Board's consideration of changing disbursement, completion, and repayment dates associated with an already approved and committed loan. The notice and comment provisions relied on by Plaintiffs in the Complaint plainly pertain to the Board's review of applications for Bank funding, not amendments to already approved funding. And because Plaintiffs "ha[d] no right to comment, [they] cannot manufacture standing by alleging that the [agency] wrongfully denied it the opportunity to do so." *United States v. Facebook, Inc*., 456 F. Supp. 3d 105, 113 (D.D.C. 2020); *see also In re Endangered Species Act Section 4 Deadline Litig*., 277 F.R.D. 1, 7 (D.D.C. 2011) (same).

Second, even if the Bank were legally required to provide notice and comment prior to the 2025 Amendment, the "mere inability to comment effectively or fully, in and of itself, does not establish an actual injury." *See, e.g.*, *Int'l Bhd. of Teamsters v. Transp. Sec. Admin.*, 429 F.3d 1130, 1135 (D.C. Cir. 2005) (rejecting a claim of organizational injury premised on an agency's failure to provide public notice of the agency action in dispute, "thereby depriving [the organization] of the opportunity to comment thereon" (citation modified)). "[C]ase law in this circuit has cast significant doubt on the viability of a claim of organizational injury premised solely on injury to

an organization's advocacy efforts," including through agency comment. *Chesapeake Climate Action Network v. Exp.-Imp. Bank of the U.S.*, 78 F. Supp. 3d 208, 237-38 (D.D.C. 2015) (group lacked organizational injury from the Bank's decision to authorize the $90 million loan guarantee without "opportunities for public input and engagement in the decision-making process" (citations omitted)).

Plaintiffs eschew using the term advocacy in the Complaint, instead labeling formal comment an "avenue of redress." *See, e.g.*, Compl. ¶ 306. In doing so, Plaintiffs stretch the concept of "redress" beyond its meaning. There is no "relief" or "remedy" offered to any commentor. Redress, Black's Law Dictionary (12th ed. 2024). Rather, the "purpose of the comment period is to allow interested members of the public to communicate information, concerns, and criticisms[.]" *Conn. Light & Power Co. v. Nuclear Regul. Comm'n*, 673 F.2d 525, 530 (D.C. Cir. 1982). And being among the general public lacking an opportunity to comment on the Amendment is not a particularized concrete impairment of or injury to Plaintiffs' organizations. *Sierra Club v. EPA*, 754 F.3d 995, 1002 (D.C. Cir. 2014) (ruling denying right to comment insufficient to support standing in absence of substantive injury); *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 15-16 (D.C. Cir. 2011) (in affirming dismissal, rejecting lack of notice and comment as sufficient grounds for standing in absence of alleged substantive injury to organization).

Third, the alternative efforts Plaintiffs allege that they need to undertake to investigate the Project and to engage other entities because of the absence of formal notice and comment are not "impairments" of the organizations' activities or operations. For example, submitting a complaint to the Bank's grievance mechanism and contacting its Inspector General are activities Friends of the Earth has already undertaken, Compl. ¶¶ 260, 262, and so undertaking the same activities are

not "impairments" of the organizations' ability to provide services.    Indeed, the Complaint summarizes Plaintiffs' past efforts to advocate against the Project with a variety of stakeholders through a variety of means, *see id.* ¶¶ 259-266, and the continuation of those activities are not impairments of Plaintiffs' organizations or actions taken to "counteract the harm."  A "[plaintiff] cannot assert Article III standing by claiming the activities that it would otherwise engage in now injure it."  *Ctr. for Democracy & Tech. v. Trump*, 507 F. Supp. 3d 213, 221 (D.D.C. 2020); *see also Chesapeake Climate*, 78 F. Supp. 3d at 238 (where plaintiff was allegedly "denied the opportunity to comment publicly on the loan guarantee," allegation that organization had to "expend additional effort to inform the public" was unspecific and "[indistinguishable] from the group's ordinary programmatic work").

B.    **A Predicted Need to Help Mozambicans Ameliorate Project Harms Does Not Provide Standing**

Plaintiffs, and Justica Ambiental in particular, also allege that if the Project goes forward, they will have to "dedicate even more time and resources" to helping local people ameliorate and seek redress for Project harms, which may be through submitting "grievance complaints" to the Bank or assisting displaced community members with resettlement.  *See* Compl. ¶¶ 312-14.  These allegations fail to plausibly plead standing for multiple reasons.

Among the deficiencies, this alleged harm is not an actual or imminent injury, because it is explicitly contingent on "if the Project proceeds," which to date it has not.  *Id*. ¶¶ 312, 315.  This alleged harm is insufficient to plead standing because it is predicated on a "speculative chain of possibilities."  *Clapper*, 568 U.S. at 410.  So, for example, *if* the Project proceeds, Plaintiffs predict more people will be displaced from their homes near the Project, and that these people will turn to Plaintiff Justiça Ambiental for unidentified "services," which in turn will cause Justiça Ambiental to devote more time and resources to help these individuals.  In other words, Plaintiffs have alleged

not an "imminent" injury but rather a "conjectural or hypothetical" future injury. *Turlock Irrigation Dist. v. Fed. Energy Regul. Comm'n*, 786 F.3d 18, 25 (D.C. Cir. 2015) (ruling "'predictions of future events (especially future actions taken by third parties)' are too speculative to support a claim of standing" (citations omitted)).

Further, each link in the chain of possibilities is largely dependent on independent third parties not before the Court. The causation element of standing requires that the asserted injury be fairly traceable to the defendant's allegedly unlawful conduct, as opposed to an injury that "results [from] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-61. Plaintiffs' predicted increase in work "depends on the unfettered choice made by independent actors"—the Project's sponsors and a variety of actors in Mozambique (e.g., the government, individuals in nearby communities, and insurgents)—"whose exercise of . . . discretion the courts cannot presume either to control or predict." *Id*. at 562. Thus, Plaintiffs fail to establish that the hypothesized future increase in services are fairly traceable to the Bank's movement of certain transaction dates. *See Elec. Priv. Info. Ctr. v. Fed. Aviation Admin.*, 892 F.3d 1249 (D.C. Cir. 2018) (finding allegation that new FAA regulations will lead to the operation of more drones leading to invasions of peoples' privacy to be insufficient to support causation and standing); *Am. Sports Council v. Dep't of Educ*., 850 F. Supp. 2d 288 (D.D.C. 2012) (denying standing to organization that failed to connect injury to defendant's conduct as opposed to independent third parties).

Finally, even if the hypothetical increase in services materialized, there is no allegation that Plaintiffs' "ability to provide services" would be perceptibly impaired. *Food & Water*, 808 F.3d at 380. On the contrary, for Justiça Ambiental conducting outreach to impacted communities, sharing community member concerns, and helping displaced individuals are "part of its mission."

13

Compl. ¶¶ 272, 279-288.  Plaintiffs are not injured by activities in which they ordinarily engage. *See Nat'l Ass'n for Latino Cmty. Asset Builders v. Consumer Fin. Prot. Bureau*, 581 F. Supp. 3d 101, 106 (D.D.C. 2022) ("Expenditure of resources in response to agency action alone is not enough to establish a cognizable injury . . . . Case law in this Circuit makes clear that there must be a separate perceptible impairment of the organization's ability to provide services[.]"); *Coal. for Humane Immigr. Rts. v. Dep't of Homeland Sec.*, Civ. A. No. 25-0943 (TNM), 2025 WL 1078776, at *5 (D.D.C. Apr. 10, 2025) ("When a nonprofit merely expands its operations to address increased demands in the communities it serves, its activities have not been tampered with. Arguably, these enhanced advocacy efforts are a *fulfillment* of an organization's mission." (citation omitted; emphasis in original)); *Safari Club Int'l v. Zinke*, Civ. A. No. 15-1026 (RCL), 2017 WL 8222114, at *5 (D.D.C. May 2, 2017) (ruling organization's alleged harm was insufficient because it was "part and parcel" of its mission and "normally expended operational costs").

### C.    Instability in Cabo Delgado Does Not Provide Standing

Plaintiffs also allege that by approving the Amendment, the Bank "enables the Project to proceed," which will result in Justiça Ambiental having to take "more frequent trips" to the Project area.  Compl. ¶ 316.  Such trips, Justiça Ambiental alleges, will be more difficult and dangerous because of insurgents and government forces operating in the area.  *Id.* ¶¶ 317-332.  But as pleaded, what makes travel within Cabo Delgado dangerous is not the Board's vote but rather the "conflict" between "insurgents" and "government-affiliated forces."  *Id.* ¶¶ 318-19, 323.  The lack of a causal connection is underscored by the fact that Justiça Ambiental has allegedly been adversely impacted even when the Project has been in *force majeure* and prior to the Board's March 2025 action.  *Id.* ¶¶ 322-323.  This injury, as alleged, is insufficient to support standing because it is a speculative risk, dependent on the actions of third parties, and not fairly traceable to the challenged Amendment vote.  *Pub. Citizen, Inc. v. Nat'l Highway Transp. Safety Admin.*, 489 F.3d 1279, 1298

(D.C. Cir. 2007) ("[W]ere all purely speculative increased risks deemed injurious, the entire requirement of actual or imminent injury would be rendered moot, because all hypothesized, non-imminent injuries could be dressed up as increased risk of future injury.").

## II.    Plaintiffs Fail to Plead Informational Standing

Plaintiffs also allege a purported "informational injury." Compl. ¶¶ 333-336.  The D.C. Circuit explained that "[a] plaintiff suffers a sufficiently concrete and particularized informational injury" only if "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)).

With respect to the first element, Plaintiffs allege generally that they have been denied "statutorily mandated information."  Compl. ¶ 333.  Specifically, Plaintiffs allege that the Bank was "statutorily required" to provide notice and comment, citing 12 U.S.C. § 635a(c)(10)(A), (D). *See id.* ¶ 144.  But again, none of those provisions mandated notice and comment prior to the Board's vote on the Amendment.  Those provisions instead apply to the Board's consideration of an application for Bank financing.  "Before any meeting of the Board for final consideration of a long-term transaction the value of which exceeds $100,000,000 . . . the Bank shall provide a notice and comment period." 12 U.S.C. § 635a(c)(10)(A).  Specifically, the "application proposing the transaction" to the Bank must be noticed in the Federal Register and provide at least 25 days for submission of "comments on the application." *Id.* § 635a(c)(10)(C)(i).  The Complaint does not and cannot allege that there was an application from Total for Project financing pending before the Board for its consideration in March 2025.  As Plaintiffs well know, the application for Project financing was considered in 2019, and the Bank complied with the above statutory provisions in 2019.  Compl. ¶¶ 84-85.

Plaintiffs also cite 12 U.S.C. § 635a(c)(10)(D), Compl. ¶ 144, but that too is not applicable. That provision specifies a "[p]rocedure for materially changed applications." *Id*. Only "[i]f a material change is made to an application" after notice is published, the Bank must publish a "revised notice of the application" and provide an additional comment period. *Id*. § 635a(c)(10)(D)(i). Again, the Complaint does not and cannot allege there was application for bank financing pending before the Board in March 2025. Nor does the Complaint allege there was a "material change" as defined by § 635a(c)(10)(D)(ii), which "includes an increase of at least 25 percent in the amount of a loan" that was requested in the pending application.[5] Therefore, the Complaint fails to allege facts indicating that this provision applied in March 2025.

After citing 12 U.S.C. § 635a(c)(10)(A), (D), the Complaint alleges a "notice and comment period for input into the economic analysis," Compl. ¶ 147, which is likely a reference to 12 U.S.C. § 635(e)(7). This statutory provision states that "[i]f, in making a determination . . . with respect to a loan or guarantee, the Bank conducts a detailed economic impact analysis," the Bank must consider the views of the public and interested parties solicited through notice and comment. *Id*. § 635(e)(7)(A), (B). As Plaintiffs know, the Bank satisfied this statutory requirement when in November 2018 it noticed its intent to conduct a detailed economic impact analysis, provided a comment period, and completed its analysis prior to authorizing the direct loan for the Project. Compl. ¶ 82. The Complaint does not and cannot allege that the Bank conducted a "detailed economic impact analysis" for the Amendment which would have triggered this specific notice and comment requirement.

---

[5]     Although the use of the term "includes" suggests the definition of material change is not exhaustive, the relevant point is that it refers to a material change in the application for funding. Plaintiffs do not and cannot allege there was an application for funding pending before the Bank that had materially changed.

Similar to 2 U.S.C. § 635a(c)(10)(D), Congress provided a "[p]rocedure regarding materially changed applications" whereby the Bank would need to publish a revised notice and provide an additional comment period *if* the Bank had the "intent" to conduct a detailed economic impact analysis of the application for financing. *Id.* § 635(e)(7)(B)(iii). But the Complaint does not and cannot allege the Board's action in March 2025 concerned an application for financing, a materially changed application for financing, or Bank intent to conduct a detailed economic impact analysis of the Amendment.

The Complaint also alleges that Plaintiffs did not have access to "monitoring reports" or updated "environmental and social impact assessments." Compl. ¶ 334-335. The Complaint, though, does not identify any statute requiring disclosure of such information. The closest Plaintiffs come is citing 12 U.S.C. § 635i-5(a)(1). *See* Compl. ¶¶ 56-57. But this statutory provision, as Plaintiffs themselves note, only mandates that the Bank "establish procedures" to account for "potential adverse environmental impacts of projects it considers for support" and that "[s]uch procedures shall provide for the public disclosure of environmental assessments and supplemental environmental reports required to be submitted to the Bank[.]"[6] *Id.* ¶ 56 (citing 12 U.S.C. § 635i-5(a)(1)). Congress did not directly mandate any particular disclosure by the Bank, and Plaintiffs admit that the Bank "implemented this statutory mandate by adopting its Environmental and Social Due Diligence Procedures and Guidelines." *Id.* ¶ 58.

In sum, Plaintiffs have not identified any "statutorily mandated information" that the Bank was legally obligated to disclose prior to amending the previously approved transaction's completion, disbursement, and repayment dates. Accordingly, Plaintiffs' reliance on

---

[6]    The borrower provided Environmental and Social Impact Assessment may be found at https://www.exim.gov/policies/exim-bank-and-environment/pending-transactions/Environmental-Category-A-and-B-Approved-Transactions under the year 2019.

"informational injury" for standing fails at the outset.  As in *Friends of Animals*, Plaintiffs cannot claim informational standing based on disclosure provisions that are plainly not applicable.  *See also Ctr. for Biological Diversity v. Int'l Dev. Fin. Corp.*, 77 F.4th 679, 686 (D.C. Cir. 2023) ("when a plaintiff claims an informational injury with no statutory support, standing will be in jeopardy").

Further, Plaintiffs do not satisfy the second prong for an informational injury.  The Complaint fails to explain how Plaintiffs "suffer[] . . . the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals*, 828 F.3d at 992.  The purpose of the cited statutory provisions, for example, is to inform the public of proposed applications for financing and the intended economic analysis of proposed transactions.  Not being informed in advance of an amendment to an already approved application is plainly not a harm sought to be prevented by the relevant statutory provisions.

In sum, Plaintiffs' Complaint fails to plausibly allege either prong of informational injury standing.

## III.    Plaintiffs Fail to Plead Representational Standing

Friends of the Earth alleges that it also brings this action "as representative of its members." Compl. ¶ 340.  To plead representative or associational standing, a plaintiff must plausibly allege that (1) the plaintiff has at least one member who "would otherwise have standing to sue in [her] own right," (2) "the interests" the association "seeks to protect are germane to [its] purpose," and (3) "neither the claim asserted nor the relief requested required the participation of [the] individual members in the lawsuit."  *Pub. Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6, 17 (D.D.C. 2018) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).  While associational standing presently remains a valid method to establish a justiciable case or controversy, judges have recently questioned whether the doctrine is consistent with Article III.  *See, e.g.*, *Indus.*

18

*Energy Consumers of Am. v. Fed. Energy Regul. Comm'n*, 125 F.4th 1156, 1167 (D.C. Cir. 2025) (Henderson, J., concurring) ("there is good reason to believe that associational standing does not meet at least two Article III requisites").

Plaintiffs identify Nina Pusic as a member of Friends of the Earth who traveled in January 2025 to Tofo Beach, Mozambique to go scuba diving and "plans to return to Mozambique in January 2027 in order to dive" and enjoy Mozambique's "unique biodiversity." Compl. ¶ 338. "The Project will harm Ms. Pusic['s] . . . aesthetic and recreational interests" through an "increase in ship traffic." *Id.* ¶ 339.

Plainly, Ms. Pusic would not have standing to sue in her own right. An alleged desire to visit Mozambique in January 2027 is not a "description of concrete plans" for imminent return. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (ruling "vague desire to return is insufficient to satisfy requirement" of imminent concrete injury). Even if the Complaint alleged a concrete plan for imminent travel, "return[ing] to Mozambique" is not the same as going to the affected area of Cabo Delegado. For standing, Plaintiffs would need to allege that Ms. Pusic will "use the area affected by the challenged activity and not an area roughly in the vicinity of it." *Lujan*, 504 U.S. at 565-566. Tofo Beach, which is nearly one thousand miles away from the liquid natural gas facility as the crow flies, could not be considered in the rough vicinity much less in the affected area.[7]

Further, the Complaint does not connect the challenged action (the Board's vote on the Amendment) with Ms. Pusic's alleged injury (harmed marine ecology caused by a hypothetical increase in ship traffic). Compl. ¶ 339. The casual connection between the Board's vote and

---

[7]    The Court may take judicial notice distance, including through use of Google maps. *United States v. Hunt*, 843 F.3d 1022, 1031 (D.C. Cir. 2016).

increased ship traffic is speculative and influenced by parties not before the Court. *See United Transp. Union v. Interstate Com. Comm'n*, 891 F.2d 908, 912 (D.C. Cir. 1989) (rejecting allegations of causation that are "overly speculative," particularly those that involve "predictions of future events (especially future actions to be taken by third parties)"). Similarly, the Complaint sets forth no facts showing it is "substantially probable" that this hypothetical injury to Ms. Pusic's aesthetic and recreational interests through increased ship traffic would be redressed by making the Bank re-do its Amendment vote. *See Ctr. for Biological Diversity v. Dep't of Interior*, 144 F.4th 296, 314 (D.C. Cir. 2025) (ruling climate change-based harm not sufficiently traceable to challenged procedural errors). Thus, the Complaint fails to plausibly allege representational standing.

## IV.    **Plaintiffs Fail to Plead Third-Party Standing**

Finally, Plaintiffs allege that the "Project . . . will harm residents of the Project area." Compl. ¶ 341. This alleged harm does not provide Plaintiffs standing because a plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

There is a limited exception to this general rule in circumstances that are not present here. For third party standing, "(1) '[t]he litigant must have suffered an "injury in fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute,' (2) 'the litigant must have a close relation to the third party,' and (3) 'there must exist some hindrance to the third party's ability to protect his or her own interests.'" *Lepelletier v. FDIC*, 164 F.3d 37, 43 (D.C. Cir. 1999) (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)). Further, although "close relation" has not been precisely defined, it has been found in only limited circumstances that "demonstrate the requisite closeness" of the relationship, such as an existing attorney-client relationship.

*Kowalski v. Tesmer*, 543 U.S. 125, 130-131 (2004) (finding no close relationship where attorneys sought to invoke the rights of potential clients).

As established above, Plaintiffs fail to plausibly allege the existence of their own cognizable injury-in-fact and therefore do not satisfy the first element of third-party standing. Further, Plaintiffs fail to satisfy the second element because the Complaint does not allege Plaintiffs have a sufficiently "close relation" to the unidentified "local residents" in Mozambique alleged to be harmed. And plaintiffs offer nothing more than an insufficient sentence parroting the third requirement—hinderance to the third party's ability to protect its own interests. *See* Compl. ¶ 343; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a formulaic recitation of the elements of a cause of action will not do"). In sum, there is no question that the very limited exception to the general prohibition on premising standing on the interests of third parties not before the Court has not been plausibly alleged.

*        *        *

**CONCLUSION**

The Bank respectfully requests that the Court dismiss Plaintiffs' Complaint for lack of standing and subject matter jurisdiction.

Date:  September 15, 2025                     Respectfully submitted,
       Washington, DC

                                             JEANINE FERRIS PIRRO
                                             United States Attorney

                                             BRIAN P. HUDAK, D.C. Bar #90034769
                                             Chief, Civil Division

                                             By:     _/s/ Sean Tepe_____
                                                   SEAN TEPE, D.C. Bar #1001323
                                                   SAM ESCHER, D.C. Bar #1655538
                                                   Assistant United States Attorneys
                                                   601 D Street, NW
                                                   Washington, DC 20530
                                                   (202) 252-2533
                                                   Sean.Tepe@usdoj.gov
                                                   (202) 252-2531
                                                   Sam.Escher@usdoj.gov

                                             *Attorneys for the United States of America*