UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRIENDS OF THE EARTH U.S., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EXPORT-IMPORT BANK OF THE UNITED STATES, et al.,<br><br>Defendants. | Civil Action No. 25-2235 (CJN) |

**DECLARATION OF ROGER I. COHEN**

I, Roger I. Cohen, pursuant to 28 U.S.C. §1746, declare as follows:

1. I am employed by the Export-Import Bank of the United States (hereafter, "EXIM") as the Assistant General Counsel for Structured & Project Finance within the Office of the General Counsel (hereinafter "OGC"). I have worked for EXIM for over thirty years. I head the OGC practice group responsible for limited recourse project and highly structured financings, large space and nuclear sector finance matters generally, and certain large corporate finance transactions.

The work performed by my group encompasses business development, origination, and post financial close portfolio management (including litigation and arbitration matters in coordination with the OGC Litigation, Fraud and Compliance group). The origination work includes, among other things, legal due diligence, negotiating and drafting of documentation and working with the relevant transaction origination teams (made up of underwriters from EXIM's Structured & Project Finance Division and engineers and environmental specialists from EXIM's Engineering & Environment Division, each within EXIM's Office of Board Authorized Finance, and other EXIM staff as appropriate, collectively hereafter, the "Origination Team" for each financing) in the related preparation of EXIM staff's authorization request memoranda provided to the EXIM Board of Directors in connection with numerous highly structured, project, and high value corporate finance transactions (including drafting of the legal issues sections in such memoranda). The practice group also works with other staff within EXIM, including working with EXIM's Office of Policy and International Relations with respect to policy issues and questions, among other things.

I am familiar with the "Mozambique LNG Project". I am duly qualified and competent to testify to the matters stated herein and authorized to make this Declaration. I make this Declaration based on my own personal knowledge and observations of facts herein and my review of the relevant records and files. EXIM's records and files are made and maintained in the ordinary course of EXIM's business.

EXIM Motion for Protective Order

2. EXIM filed a Motion for Leave to file three documents, two Board Memoranda and an Operative Memorandum, under seal subject to an "attorneys eyes only" protective order. These three documents, should be safeguarded from production in their entirety based on FOIA Exemption 5 (5 U.S.C. § 552(b)(5)), deliberative process. In addition, these documents are packed with information and opinions that are intertwined with information based on FOIA Exemption 4 (5 U.S.C. § 552(b)(4)).

Exemptions Claimed

3. 5 U.S.C. § 552(b)(5) states that FOIA exempts from production: inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency.

5 U.S.C. § 552(b)(5) protects from disclosure of information that is normally privileged in the civil discovery context, including information that is protected by the deliberative process privilege and the attorney-client privilege. The deliberative process privilege protects the confidentiality of candid views and advice of U.S. Government personnel in their internal deliberations related to policy formulation and administrative direction. The two Board Memoranda at issue in this case and addressed by this Declaration all involve discussions and analysis of issues relating to statutory mandates imposed by Congress and how EXIM can address those mandates.

4. FOIA Exemption 5 protects from disclosure those inter- or intra-agency documents that are normally privileged in the civil discovery context. The three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege. The Board Memoranda at issue in this case are deliberative process documents internal to EXIM and U.S. Government access and use. The Board Memoranda include all materials developed and presented by EXIM staff to the Board, addressing applications for financing, which are all part of the decision-making, deliberative process. As such, they qualify for protection under the Deliberative Process Privilege, which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. The deliberative process would be injured if EXIM staff had to prepare each Board memorandum with the knowledge that it could be released if requested. In addition, third parties that candidly supply EXIM this information so that the Board can make the most informed decision, would be reluctant to do so in the future.

5. FOIA Exemption 4 protects trade secrets and confidential commercial or financial information obtained from a person, ensuring that sensitive information submitted to the government is not disclosed. The Board Memoranda and the Operative Memo at issue in this case and addressed by this Declaration all include information that was identified by the provider as commercial or financial in nature and containing sensitive business confidential and/or protected information under the Trade Secrets Act, 18 U.S.C. § 1905 ("hereinafter "TSA").

6. EXIM seeks protective order for the Board Memoranda, because EXIM determined that there is foreseeable harm in producing these documents and that releasing the information contained within these documents would have a detrimental effect on the free and open exchange of ideas within EXIM, as well as from third parties to EXIM. They also include information that is attorney-client work product and otherwise attorney-client privileged.

7. Specifically, in its underwriting and Board approval process EXIM relies on (a) the willingness of its project sponsors, borrowers, U.S. exporters, EPC (engineering, procurement and construction), O&M (operations and management) and other contractors and project parties and other relevant external parties (hereinafter collectively "External Project Parties") to freely and candidly provide complete information including materials that they consider to be sensitive business confidential and/or protected under the TSA, as well as security-related information, and (b) candid and complete information between members of EXIM's Board of Directors, senior management and the relevant Origination Teams.

Additionally, the types of information that EXIM receives and includes in its Board Memoranda and other underwriting documents contain commercially sensitive data, recommendations, and/or opinions of External Project Parties formulating strategies for responding to inquiries on security-related and sensitive matters.

8. Disclosure of materials containing the details of internal discussions held in the course of underwriting and/or formulating policies could reasonably be expected to chill the open and frank exchange of comments and opinions that occurs between EXIM employees at these critical times. In addition, disclosure of these details would severely hamper the ability of responsible EXIM employees to formulate and carry out executive branch programs.

9. To the extent that any of the materials disclosed include business sensitive and/or TSA protected information, any such disclosure could reasonably be expected to have a chilling effect on the willingness of External Project Parties to provide such information which would likely result in a significant adverse impact on the ability of EXIM staff to effectively underwrite potential credits.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 30th of September, 2026.